IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NATASHA D. PETTAWAY,          :

    Plaintiff,              :

vs.                           :     CA 15-0640-C

CAROLYN W. COLVIN,            :
Acting Commissioner of Social Security,
                                    :

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 20 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 21 (endorsed order of reference).) Upon consideration of the administrative record, plaintiff's brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

---

[1] At the behest of the Court, given the age of this case, the parties in this matter waived oral argument.

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 21 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for
(Continued)

Plaintiff alleges disability due to deep venous thrombosis status post vena cava filter and pulmonary embolectomy, low back pain, edema, depression, esophageal reflux, morbid obesity, and anemia. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.
>
> 2.   The claimant has not engaged in substantial gainful activity since September 3, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.   The claimant has the following severe impairments: deep venous thrombosis status post vena cava filter and pulmonary embolectomy; low back pain; edema; depression; esophageal reflux; morbid obesity; anemia (20 CFR 404.1520(c) and 416.920(c)).
>
> .   .   .
>
> 4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> .   .   .
>
> 5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to lift and carry 10 pounds, stand and walk for approximately 2 hours per day, and sit for 6 hours per day with normal breaks. The claimant should not perform pushing and pulling of leg or foot controls. The claimant would need to alternate between sitting and standing at the workstation on an occasional basis. The claimant should not have to climb, crouch, kneel, crawl, or squat. Due to some dizziness, the claimant should not drive, operate dangerous moving machinery, or work at unprotected heights. The claimant should be limited to simple routine tasks. Due to depressive symptoms, pain, etc. she could be expected to have deficits in concentration,

---

this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**persistence or pace that could cause her to be off task or nonproductive for about 5 percent of the workday. Additionally, the claimant should have no interaction with the general public.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

. . .

The claimant alleges that she is disabled and thus unable to work as a result of acute deep vein thrombosis and heart problems. Additionally, in a Disability Report filed on appeal, the claimant claimed back pain and the inability to walk without assistance and the inability to lean back. The claimant testified that she experiences constant pain. The claimant further testified that she is depressed.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In terms of the claimant's [] DVT status post vena cava filter and pulmonary embolectomy, the claimant has shown great improvement. In September 2012, the claimant underwent a median sternotomy, removal of right ventricle thrombectomy and inferior vena cava filter with a principal diagnosis of thrombus in the right ventricle, pulmonary embolism, deep venous thrombosis, and morbid obesity. The claimant's discharge following her procedure was held a day because of leg pain and shortness of breath which resolved. Subsequently, the claimant was again admitted to USA Medical Center with left lower extremity pain and swelling. The claimant consented to Coumadin therapy which was started in the hospital. The claimant followed up with Mobile Cardiovascular Imaging on October 15, 2012, and it was noted she was doing well postoperatively. All of her surgical incisions had healed nicely. The claimant was encouraged to be more active. Her INR was 1.7. The claimant was given compression stockings to wear. The claimant returned for periodic follow up appointments where her INR was checked while taking the Coumadin. On November 26, 2012, it was noted that the claimant would be going out of town on December 21. On December 17, 2012, the claimant returned for follow up and complained of some pain and swelling in her legs. A venous Doppler showed evidence of a sub-acute DVT in the right superficial femoral vein extending from the mid thigh to the distal thigh. The left CFV and popliteal veins showed no

evidence of DVT with good distal augmentation. The claimant was advised to take her Coumadin and wear the compression stockings when she traveled. When the claimant returned on January 7, 2013, it was noted that she continued to have significant swelling in her leg, as well as chest pain and shortness of breath. On January 24, 2013, the claimant called in and requested medication for pain and nausea. Dr. Maltese declared the claimant unable to work over the next six months as she receive[d] her Coumadin therapy. On February 11, 2013, the claimant returned for follow up and it was noted that she had recanalized her DVT, not normal flow yet but it was improving. On March 18, 2013, it was noted that the claimant had a previous DVT as well as a vena cava filter and a pulmonary embolectomy. The claimant was observed to be doing very well and her venous study looked good. It was noted that there had been good recanalization. The decision was made to stop the Coumadin therapy. The claimant returned on April 29, 2013, and it was noted she was having "considerable improvement and getting good recanalizaton." The claimant was having leg pain but it was noted to have "definitely improved." Dr. O'Gorman noted that he did not feel the claimant was using her compression stockings as much as they would like for her to use them. The claimant was off anti-coagulation and just using an Aspirin a day. She was advised to follow up in six months. The claimant returned for care on November 4, 2013, and it was noted that she remained off Coumadin and taking only a Baby Aspirin a day. She had a follow up venous study which showed no evidence of DVT and represented wall thickening in the right superficial femoral vein with good distal augmentation. She was still complaining of some pain and swelling in her leg along with pain along her sternotomy. It was noted that the claimant had not been very consistent with her compression stockings. The claimant was prescribed Lortab and advised to follow up in six months.

In terms of the claimant's remaining impairments, she has had minimal and conservative treatment. The claimant has sought periodic treatment at the Mobile County Health Department, and has been diagnosed with low back pain, morbid obesity, edema, esophageal reflux, and depression. In December 2012, the claimant presented to the health department and complained of low back pain which radiated to her bilateral legs. A straight leg raising test was positive. An x-ray of the claimant's lumbar spine performed in December 2012 reflected that the vertebral body heights and alignment appear maintained, no fracture or sublaxation. No acute process was demonstrated. In March 2013, the claimant was diagnosed with depression. In June 2013, the claimant was diagnosed with anemia, morbid obesity, and prediabetes. She was prescribed Ferrous Sulfate. Also in June 2013, the claimant was diagnosed with dysthymic disorder and prescribed an antidepressant. In August 2013, the claimant presented at the health department in much better spirits since starting her anti-depressant, noted to be smiling and laughing. She was diagnosed with esophageal reflux, morbid obesity, and anemia. The claimant was prescribed Omeprazole and Victoza. In September 2013, the claimant presented to the health department and was diagnosed with edema and

morbid obesity, with a BMI of 44.3. I have considered the medical evidence related to obesity in accordance with SSR 02-1P.

As for the claimant's subjective complaints of physical and mental impairments, the claimant's allegations are not fully credible. While the claimant did have DVT status post vena cava filter and pulmonary embolectomy, the medical evidence indicates great improvement. The claimant no longer has to take Coumadin but now just a Baby Aspirin. Her more recent tests reflected no remaining evidence of DVT. While she has voiced complaints from time to time of leg pain, she has not been compliant with the advice that she wear compression stockings. Further, the claimant has been encouraged to be more active, but she testified that she does little activity. Regarding the claimant's remaining physical impairments, she has received minimal and conservative treatment. Objective findings regarding the claimant's back were normal. The claimant has not sought emergency treatment for her physical or mental impairments during the period of adjudication. As to the claimant's depression, treatment notes reflect that the claimant showed improvement after being prescribed an antidepressant. She has not sought mental health treatment from a specialist, nor has she sought mental health counseling. Moreover, the claimant has traveled to Virginia and Butler on trips to see family and friends during the period of adjudication. The limitation to a reduced range of sedentary unskilled work with no contact with the general public fully accommodates the claimant's physical and mental health impairments.

As for the opinion evidence, I give great weight to the opinion of Lisa Mani, M.D. in finding that the claimant can perform a range of sedentary work. While I have further limited the claimant in the residual functional capacity, Dr. Mani's opinion is generally consistent and is supported by the medical evidence as a whole.

I have considered the statements of treating physician Dr. Maltese made during the time of the claimant's Coumadin treatment, stating in January 2013 that the claimant was "permanently disabled at the present time" and declared the claimant "unable to work over the next months as she receives her Coumadin therapy." While the claimant did undergo Coumadin therapy for her DVT, the claimant's symptoms were not disabling, and further, have notably improved. The limitation to a reduced range of sedentary work fully accommodates the claimant's symptoms.

In sum, the above residual functional capacity assessment is supported by a preponderance of the most credible evidence of record including the claimant's resolved DVT, the minimal and conservative treatment of her physical and mental impairments, and the lack of objective findings as to the claimant's impairments.

**6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

. . .

**7.     The claimant was born on December 19, 1970 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

. . .

If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as order clerk (DOT Code 209.567-014, sedentary, unskilled, SVP=2) with approximately 125,330 jobs in the national economy (after a 50 percent reduction) and approximately 16[],040 jobs in Alabama (after a 50 percent reduction); charge account clerk (DOT Code 205.367-014, sedentary, unskilled, SVP=2) with approximately 98,330 jobs in the national economy (after a 50 percent reduction) and approximately 1,660 jobs in Alabama (after a 50 percent reduction); and addressing clerk (DOT Code 209.587-010, sedentary, unskilled, SVP=2) with approximately 96,560 jobs in the national economy and approximately 550 jobs in Alabama.

While the vocational expert's testimony is generally consistent with the information contained in the Dictionary of Occupational Titles, the vocational expert did note that the Dictionary of Occupational Titles does not address sit/stand options or reducing numbers by 50 percent. The

6

vocational expert's testimony regarding the availability of jobs is based upon her knowledge and experience.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from September 3, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 23, 24, 25-26, 26-28, 28-29 & 29-30 (internal citations & footnote omitted; emphasis in original).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra*, 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied*, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those sedentary jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

1206, 1210 (11th Cir. 2005)).  And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'"  *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Pettaway asserts two reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in relying upon a non-examining physician's opinion to support the RFC determination while assigning little weight to the opinion of plaintiff's treating physician in violation of *Dillard v. Astrue,* 834 F.Supp.2d 1325 (S.D. Ala. 2011); and (2) the ALJ committed reversible error, in violation of 20 C.F.R. § 416.927(d) and SSR 96-2, by failing to assign controlling weight to the opinion of the plaintiff's treating physician and, instead, relying on the opinion of a non-examining physician. Given the close affinity between these two issues, they are considered together. At bottom, it is plaintiff's position that the ALJ erred in affording great weight to the opinion of non-examiner Dr. Mani regarding plaintiff's RFC and in affording little weight to the opinion of the treating physician.

In this case, on January 7, 2013, plaintiff's treating thoracic/cardiovascular surgeon, Dr. Carl Maltese, opined that Pettaway "should be classified as permanently disabled *at the present time*." (Tr. 285 (emphasis supplied).) Treatment notes from Dr. Maltese's office, generated on January 24, 2013, give more "definition" to the treating physician's opinion in making clear that plaintiff would be "unable to work over the next six months as she receives her Coumadin therapy for her DVT." (*Id.*) As it turned out, Pettaway's Coumadin therapy was ended by one of Dr. Maltese's partners, Dr. Ronald O'Gorman, prior to the conclusion of six months, on March 18, 2013 (Tr. 283 ("She is doing very well. Her venous study looks good. There has been good

recanalization. I think at this point it is probably okay to go ahead and stop her Coumadin.")), and was never restarted (*compare* Tr. 281 *with* Tr. 278). Indeed, Dr. O'Gorman noted on April 29, 2013, that plaintiff was considerably improved and though she still had some leg pain that pain had "definitely improved[]" and she was not using her compression stockings as much as his office would like. (Tr. 281.) Moreover, on November 4, 2013, Dr. Maltese's office notes reveal that plaintiff's follow-up venous study showed no evidence of DVT and though she still complained of some pain and swelling in the leg it was clear she was not wearing her compression stockings consistently. (Tr. 278.)

On February 25, 2013, Dr. Lisa Mani, a non-examining, reviewing physician, specifically noted that "[t]he less-than-sedentary RFC 4734 rating dated 11/28/2012 is affirmed as written . . . based on a review of records before and after this date." (Tr. 257.) The rating dated November 28, 2012, indicated plaintiff could lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for a total of 2 hours in an 8-hour workday; sit for about 6 hours total during an 8-hour workday; had an unlimited ability to push and/or pull using hand and/or foot controls, except as shown with respect to lifting and carrying; and had an unlimited ability to climb ramps and stairs, balance, stoop, kneel, crouch and crawl. (*Compare id. with* Tr. 64-65.) Dr. Mani noted that her RFC rating was "applicable" to September 3, 2013, "with the conditions addressed or rated not anticipated to last in their present state of severity for twelve months." (Tr. 257.)

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050,

10

1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips, supra,* 357 F.3d at 1240 (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

In this case, the ALJ clearly accorded little weight the statements of Dr. Maltese noted above: "While the claimant did undergo Coumadin therapy for her DVT, the claimant's symptoms were not disabling, and further, have notably improved. The limitation to a reduced range of sedentary work fully accommodates the claimant's symptoms." (Tr. 28.) And while it is true that the ALJ accorded great weight to the RFC determination of non-examiner Dr. Mani, finding it generally consistent with and supported by the medical evidence as a whole, she also noted that her RFC determination "further limited the claimant[.]" (*Id.*) Indeed, the ALJ's latter statement is true inasmuch as the ALJ found, contrary to Dr. Mani, that Pettaway should not perform pushing and pulling of leg or foot controls; should never climb, crouch, kneel, crawl or squat; and would need a sedentary job allowing a sit/stand option. (*Compare* Tr. 25 *with* Tr. 257 & 64-65.)

The undersigned turns first to plaintiff's argument that the ALJ erred in relying upon a non-examining physician's opinion to support her RFC determination while assigning little weight to the opinion of plaintiff's treating physician in violation of *Dillard v. Astrue,* 834 F.Supp.2d 1325 (S.D. Ala. 2011). There can be little question but that this Court, in *Dillard, supra,* held that "the Commissioner's fifth-step burden cannot be met by a lack of evidence or, where available, by the residual functional capacity assessment of a non-examining, reviewing physician; instead, this fifth-step burden must be supported by the residual functional capacity [] assessment of a treating or examining physician." 834 F.Supp.2d at 1332 (citation and footnote omitted). The undersigned, however, finds the plaintiff's reliance on *Dillard* misguided.  Initially, the Court notes that Dr. Maltese offered no assessment of plaintiff's RFC but simply conclusorily stated that she was disabled for the "present time[,]" and later offered some "definition" to the disability opinion by indicating that plaintiff would be unable to work while undergoing Coumadin therapy, a treatment regimen which ended only a few months after the disability opinion was rendered. Notwithstanding that the ALJ had no obligation to accord great weight to Dr. Maltese's statements since they relate to a dispositive issue reserved to the Commissioner, *compare Kelly v. Commissioner of Social Security,* 401 Fed.Appx. 403, 407 (11th Cir. Oct. 21, 2010) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating source[.]") *with Lanier v. Commissioner of Social Security,* 252 Fed.Appx. 311, 314 (11th Cir. Oct. 26, 2007) ("The ALJ correctly noted that the opinion that Lanier was unable to work was reserved to the Commissioner."), as specifically indicated by the ALJ Pettaway's condition improved to the point that her symptoms were not disabling. Indeed, by March 18, 2013, plaintiff's

Coumadin therapy was completed and her venous studies were good (Tr. 283), approximately six months after her deep venous thrombosis problems began on September 10, 2012 (*see* Tr. 204). Thus, even giving consideration to Dr. Maltese's conclusory non-medical disability opinions on January 7 & 24, 2013, since those opinions were "temporary" and do not otherwise constitute the treating physician's RFC determination,[5] this Court has no basis to find that the ALJ in any manner violated *Dillard* under the specific facts of this case. More importantly, plaintiff's *Dillard* argument is misguided because, as this Court has held on numerous occasions, "[i]n order to find that the ALJ's RFC assessment is supported by substantial evidence, [] it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Jones v. Colvin*, 2015 WL 5737156, *24 (S.D. Ala. Sept. 30, 2015) (collecting cases). Here, as previously indicated, the responsibility for making the residual functional capacity determination rests with the ALJ, *see, e.g.,* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity."), and the ALJ's RFC assessment in this case for less than the full range of sedentary work is supported by substantial evidence in the record, including not only Dr. Mani's RFC assessment (*see* Tr. 257)[6] but, as well, the treatment notes of Drs. Maltese and O'Gorman and all evidence related to plaintiff's DVT (*see* Tr. 204-234, 238-251 &

---

[5]  That Dr. Maltese's opinions were not meant to be "permanent" in nature is clear based upon earlier records from mid-October 2012 that "encouraged" Pettaway to "be more active[]" and to "begin lifting [] greater than 15 pounds." (Tr. 287.)

[6]  The undersigned agrees with the ALJ that Dr. Mani's "general" RFC opinion for a reduced range of sedentary work is consistent with and supported by the medical evidence of record (Tr. 28); however, as the ALJ made clear, she added further (and significant) limitations to Dr. Mani's RFC determination (*id.*). Thus, the ALJ's RFC determination (Tr. 25) is truly her own and not a mere parroting of Dr. Mani's RFC findings.

263-293) and all other relevant medical evidence in the record (*see* Tr. 315-342 & 344). Thus, no error was committed by the ALJ in this regard.

In addition, to the extent any further comment is necessary, this Court specifically finds that the ALJ in this case did not err in failing to assign controlling weight to Dr. Maltese's January 2013 statements because, as aforesaid, those statements relate to a dispositive issue reserved to the Commissioner, *see Kelly, supra,* 401 Fed.Appx. at 407("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating source[.]"). Moreover, Dr. Maltese's statements were decidedly "temporary" and because Pettaway's condition significantly improved and "removed" the "but for" causes of her temporary disability (that is, her operation(s) and the follow-up Coumadin therapy) in a little over six months, there was simply no opinion from Dr. Maltese "left" for which the ALJ was required to afford considerable weight. And because, as aforesaid, the evidence of record in this case supports the ALJ's RFC determination for a reduced range of sedentary work, the ALJ committed no error in according great weight to the "general" RFC finding of Dr. Mani that plaintiff was capable of performing a range of sedentary work.

In light of the foregoing, and because the plaintiff makes no argument that the ALJ failed to identify other work existing in significant numbers in the national economy that the claimant is capable of performing based upon the aforementioned RFC assessment, the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Sec.,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work

experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Sec.,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 5th day of January, 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**